**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PLAYBOY ENTERPRISES INTERNATIONAL, INC., | ) ) ) | |
| Plaintiff, | ) | No. |
| v. | ) ) | |
| FRESTACOM – LISBON MEDIA PUBLISHING, LDA; AND FRESTA GROUP SGPS | ) ) ) | |
| Defendants. | ) ) | |

**COMPLAINT**

Plaintiff, PLAYBOY ENTERPRISES INTERNATIONAL, INC., by its attorneys, James R. Pranger and Neal, Gerber & Eisenberg LLP, for its Complaint against defendants, FRESTACOM – LISBON MEDIA PUBLISHING, LDA and FRESTA GROUP SGPS, states as follows:

**The Parties**

1.      Plaintiff, Playboy Enterprises International, Inc. ("Playboy"), is a Delaware corporation, having its principal executive offices and place of business at 680 North Lake Shore Drive, Chicago, Illinois.

2.      FrestaCom – Lisbon Media Publishing, Lda ("FrestaCom") is, upon information and belief, a corporation organized and existing under the laws of Portugal, having its principal place of business at Edificio Bocage, Rua Poeta Bocage, No. 2, 3 D, 1600 – 581 Lisbon, Portugal.  FrestaCom is a publisher of magazines  For some time prior to July 22, 2010, FrestaCom was licensed by Playboy to publish and sell a Portuguese-language monthly men's general-interest lifestyle magazine called *Playboy* (the "Foreign Edition") pursuant to the

International Publishing Licensing Agreement dated as of November 1, 2008 and entered into by and between Playboy and FrestaCom (the "IPLA").

3.      Fresta Group SGPS   ("Fresta Group") is, upon information and belief, a corporation organized and existing under the laws of Portugal, having its principal place of business at Edificio Bocage, Rua Poeta Bocage, No. 2, 3 D, 1600 – 581 Lisbon, Portugal.  Fresta Group represents itself as FrestaCom's parent company and is an unconditional guarantor of all of FrestaCom's duties and obligations under the IPLA.

<u>**Jurisdiction and Venue**</u>

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2), the matter in controversy exceeding the sum or value of $75,000, exclusive of interest and costs, and the dispute being one between a corporate citizen of the States of Delaware and Illinois on the one hand, and citizens of Portugal on the other hand.  This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claims asserted herein arise under the laws of the United States.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(3), as it is the judicial district in which defendants FrestaCom and Fresta Group are subject to personal jurisdiction at the time of the commencement of this action, and there is no other district in which this action may otherwise be brought.

6.      Venue is proper in this district for the additional reason that the parties contractually submitted to jurisdiction and elected venue in this district:  Paragraph 16 of the IPLA specifically provides that the IPLA is governed by Illinois law without regard to its conflicts provisions, the parties submit to personal jurisdiction here and: "[t]he parties hereto agree that any and all disputes arising out of relating in any way to this Agreement shall be litigated only in courts sitting in Cook County, Illinois."

2

**Facts Common to All Counts**

7.     Playboy is a brand-driven, international multimedia entertainment company that publishes an internationally circulated magazine, operates television networks, and distributes programming via mobile and online platforms.

8.     *Playboy* magazine is the best-selling monthly men's magazine in the world based on the combined circulation of the U.S. and international editions. The U.S. edition has a rate base of 1.5 million and approximately one in ten men in the U.S. age 18 to 34 reads the magazine.

9.     Playboy has 26 licensed foreign editions, all of which are profitable to Playboy and serve as regional brand drivers. An estimated 9 million adults read Playboy's international editions each month, bringing the magazine's global readership to more than 18 million.

10.     Playboy owns the registered trademarks for PLAYBOY and the Rabbit Head Design, (collectively, the "Marks") and owns or controls the rights to images from its art and photo archives (collectively with the Marks, the "Playboy Property"). Through longstanding use and promotion and through Playboy's ingenuity, the Marks have become "among the most famous and well-recognized trademarks in the entire world," *Playboy Enterprises International, Inc. v. Muller*, 314 F. Supp. 2d 1037, 1038 (Dist. Nev. 2004), and contribute significantly to Playboy's well-known and valuable international consumer brand.   These marks and the goodwill they have come to represent are extremely valuable corporate assets of Playboy, the threatened and actual infringement and dilution of which Defendants are causing and, unless enjoined, will continue to cause Playboy irreparable harm.

11.     On November 1, 2008, Playboy and FrestaCom entered into a detailed and comprehensive written licensing agreement, the IPLA, by which Playboy granted FrestaCom the right to use the Playboy Property for a specified term in connection with the publication and sale

in Portugal of a Portuguese-language monthly men's general interest lifestyle magazine entitled *Playboy* only for distribution in Portugal.

12.     On or about December 3, 2008, as FrestaCom's parent company, Fresta Group executed a letter of guarantee (the "Guarantee"), expressly guaranteeing "without any limitation of any kind", "the performance by FrestaCom of all the terms and conditions of the [IPLA]" and to be responsible "jointly and severally with FrestaCom for all liabilities of FrestaCom arising out of its obligations under or in connection with [the IPLA] or by reason of any breach thereof." A copy of the Guarantee is attached hereto as Exhibit "A."

13.     Pursuant to Paragraph 3 of the IPLA, FrestaCom also was required to make certain guaranteed royalty payments to Playboy in the second year of the license.  FrestaCom failed to make these payments in a timely manner, and in fact, has never made the payments (of $62,500 each) that were due in January, April and July 2010.  Playboy made several good faith attempts to secure performance by FrestaCom, to no avail.

14.     Paragraph 12.a.i of the IPLA provides that, upon failure by FrestaCom to make any payment timely, Playboy may terminate all of FrestaCom's rights under the IPLA upon ten days written notice and failure to cure.  Paragraph 12.a.ii of the IPLA provides that, upon any other default by FrestaCom of its duties under the IPLA, Playboy may terminate all of FrestaCom's rights under the IPLA upon thirty days written notice and failure to cure.

15.     As of May 25, 2010, FrestaCom's defaults of its obligations under the IPLA included, without limitation, non-payment of guaranteed royalties totaling over $190,540 and failure to submit statements required pursuant to paragraph 4 of the IPLA.  Accordingly, in compliance with the notice and termination provisions of the IPLA, on May 25, 2010, Playboy sent a Notice of Default to FrestaCom (the "Notice of Default").  A copy of the Notice of Default is attached hereto at Exhibit "B."

4

16.     Paragraph 17 of the IPLA provides, in pertinent part, that notices under the IPLA are effective two business days after the date on which they are sent by overnight courier service; or the date indicated as received on the overnight courier service confirmation receipt, whichever is earlier.  In addition to delivery by Federal Express, priority overnight, Playboy also e-mailed the Notice of Default to FrestaCom.  Accordingly, under the terms of the IPLA, the Notice of Default was effective no later than Thursday, May 27, 2010.

17.     In the Notice of Default, in accordance with Paragraph 12(a)(i) of the IPLA, Playboy gave FrestaCom ten days in which to cure its payment defaults.  FestaCom failed and refused to cure timely any of its defaults.

18.     On June 7, 2010, as a courtesy, Playboy sent a copy of the Notice of Default to Ms. Ana Fresta of defendant Fresta Group as guarantor for FrestaCom.  A copy of that correspondence is attached hereto as Exhibit "C."  Neither Ms. Fresta nor anyone from Fresta Group responded to Playboy. In fact, they refused to accept delivery of that correspondence.

19.     On June 16, 2010, Playboy caused a special Portuguese bailiff to attempt to deliver the Notice of Default to Fresta Group.  On three separate occasions in late June and early July, 2010, Fresta Group agents or employees refused to accept delivery of the Notice of Default.

20.     On approximately June 16, 2010, Playboy received an e-mail from FrestaCom, by which FrestaCom proposed a resolution of its outstanding defaults that did not entail FrestaCom's complying with its obligations under the IPLA.  A copy of FrestaCom's e-mail is attached hereto at Exhibit "D."

21.     On June 29, 2010, without waiving any of its rights under the IPLA and the Guarantee, Playboy responded in writing to FrestaCom's June 16 e-mail with a generous counteroffer.  Playboy offered to reduce the fourth quarter 2010 Guaranteed Royalty payment by fifty percent, and agreed to consider reductions of 2011 and 2012 Guaranteed Royalty payments,

provided that FrestaCom: (a) cured its payment defaults by paying promptly all amounts then due and outstanding under the IPLA; and (b) provided Playboy with an adequately detailed business plan for FrestaCom's operation of the Portuguese Playboy edition in 2011 and 2012. Playboy's counteroffer also was contingent on FrestaCom's acceptance of all of its terms within 5 business days.  A copy of Playboy's counteroffer is attached hereto as Exhibit "E."  FrestaCom did not timely respond to Playboy's counteroffer, never agreed to accept all of its terms, and never cured any of its defaults.

22.     Accordingly, on July 22, 2010, in compliance with the IPLA, Playboy sent a written Notice of Termination to FrestaCom, confirming termination of the IPLA and demanding, among other things, that FrestaCom immediately cease using the Playboy Property, cease publishing the Portuguese edition of Playboy and comply with its responsibilities upon termination (the "Notice of Termination").  A copy of the Notice of Termination is attached hereto at Exhibit "F."  In addition to delivery by Federal Express, priority overnight, Playboy also e-mailed the Notice of Termination to FrestaCom and, as a courtesy, delivered a copy to the guarantor, Fresta Group, also by Federal Express, priority overnight.  As such, under the terms of the IPLA, the Notice of Termination was effective no later than Monday, July 26, 2010.

23.     Paragraph 12.e of the IPLA provides that, upon termination by Playboy as a result of FrestaCom's default, FrestaCom is required to immediately make payment to Playboy of, among other things, all guaranteed royalties outstanding through the effective date of termination, plus liquidated damages in the amount of the entire guaranteed royalty amount for the license year in which the termination occurs, without proration.

24.     Paragraph 14.a and b of the IPLA provide, in pertinent part, that upon termination of the IPLA for any reason: all rights granted to FrestaCom under the IPLA immediately revert to Playboy; FrestaCom must immediately cease all publication of the magazine and use of the

Playboy Property as well as anything similar to the Marks or associated with Playboy; and FrestaCom remains liable to Playboy for all obligations that it incurred to Playboy prior to or subsequent to the termination.  Paragraph 14.c and d of the IPLA provide in pertinent part, that upon termination of the IPLA for any reason, all rights, including without limitation copyrights, that FrestaCom may possess with respect to the subject matter of the IPLA are deemed assigned to Playboy.  Paragraph 14 of the IPLA goes on to provide, in pertinent part, that upon termination of the IPLA for any reason, FrestaCom has additional duties to Playboy regarding destruction of copies of the Portuguese edition that are on hand or in process, prompt delivery to Playboy of subscriber lists, advertising contract files and related materials, and refund or transfer of subscriptions to Playboy's assignee.  FrestaCom expressly acknowledged in Paragraph 14 that any failure by it or its agents to cease manufacture and sale of the Portuguese edition upon termination would result in damage for which there is no adequate remedy at law and for which Playboy would be entitled to temporary and permanent injunctive relief.

25.    Notwithstanding the Notice of Termination, FrestaCom continues to use the Playboy Property, has not made payment of any of the outstanding amounts due to Playboy pursuant to the IPLA, and has published an unauthorized August issue of its *Playboy* magazine in Portugal.  A copy of the cover of that issue is attached hereto at Exhibit "G."

26.    Defendants actions are severely injuring Playboy's reputation and the goodwill it has carefully cultivated over the last 50 years. The unauthorized publication of FrestaCom's *Playboy* magazine in Portugal is also interfering with Playboy's ability to conduct its publishing business in that country.

**Count I**
**Lanham Act – Trademark Infringement**

27.    For its paragraph 27 of this Complaint, Playboy incorporates by reference and restates the allegations set forth in paragraphs 1-26 above.

28.     Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), provides, in pertinent part:

Any person who shall, without the consent of the registrant … use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistakes, or to deceive … shall be liable in a civil action by the registrant[.]

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides, in pertinent part:

Any person who, on or in connection with any goods, uses in commerce any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, false or misleading description . . . [or] representation of fact, which—(a) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person … shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

29.     FrestaCom's unauthorized use of the Playboy Property in connection with the Portuguese edition following termination of the IPLA constitutes trademark infringement in violation of 15 U.S.C. §§ 1114(1) and 1125(a).

30.     Without the consent of Playboy, FrestaCom knowingly is using the Playboy Property in foreign commerce to manufacture, promote, sell, and distribute an unauthorized version of *Playboy* magazine in Portugal and on Frestacom's internet site without authorization from Playboy.

31.     FrestaCom's use of the Playboy Property in connection with an unauthorized publication is likely to cause, and on information and belief has actually caused, confusion in the marketplace by creating the false and erroneous impression that Playboy has authorized or licensed the publication, and that Playboy has exercised some degree of control regarding the quality and appearance of the publication as well as the conditions and controls under which it was published.

32.     As the guarantor for FrestaCom, and pursuant to the express terms of the Guarantee, Fresta Group is jointly and severally liable for all of FrestaCom's violations set forth herein.

33.     Playboy has suffered and, unless Defendants are enjoined, will continue to suffer, immediate and irreparable harm from Defendants' willful and wrongful conduct.

34.     FrestaCom's conduct alleged herein was malicious, fraudulent, deliberate and willful.

35.     Playboy has no adequate remedy at law.

**Count II**
**Lanham Act – Trademark Dilution**

36.     For its paragraph 36 of this Complaint, Playboy incorporates by reference and restates the allegations set forth in paragraphs 1-35 above.

37.     The Marks are famous, valuable and are among the most recognizable trademarks in the world.

38.     FrestaCom is using the Marks to publish an unauthorized version of *Playboy* magazine and to promote such unauthorized issue on an unauthorized website.

39.     FrestaCom's use and misuse of the Marks began well after those trademarks became famous.

40.     FrestaCom's ongoing unauthorized use of the Marks dilutes the quality of these trademarks and diminishes their capacity to identify and distinguish those goods that are authorized, approved and licensed by Playboy, in violation of 15 U.S.C. § 1125(a).  Playboy has suffered and, unless Defendants are enjoined, will continue to suffer, immediate and irreparable harm from Defendants' willful and wrongful conduct.

41.     As the guarantor for FrestaCom, and pursuant to the express terms of the Guarantee, Fresta Group is jointly and severally liable for all of FrestaCom's violations set forth herein.

42.     Playboy has no adequate remedy at law.

**Count III**
**Lanham Act – Trademark Counterfeiting**

43.     For its paragraph 43 of this Complaint, Playboy incorporates by reference and restates the allegations set forth in paragraphs 1-42 above.

44.     Without authorization, and in violation of 15 U.S.C. § 1114(1), FrestaCom is using marks or designations that are identical to the PLAYBOY and Rabbit Head Design registered trademarks, in commerce, to manufacture, promote, sell, and distribute unauthorized publications.  FrestaCom has thus counterfeited the Marks.

45.     FrestaCom's use of the counterfeit trademarks is likely to cause, and on information and belief, has actually caused, confusion in the marketplace and has deceived consumers.

46.     FrestaCom has acted maliciously, fraudulently, deliberately, willfully, and with knowledge that its use of counterfeit trademarks would deceive and/or cause confusion and mistake.

47.     As the guarantor for FrestaCom, and pursuant to the express terms of the Guarantee, Fresta Group is jointly and severally liable for all of FrestaCom's violations set forth herein.

48.     Playboy has suffered and, unless Defendants are enjoined, will continue to suffer, immediate and irreparable harm from Defendant's willful and wrongful conduct.

49.     Playboy has no adequate remedy at law.

**Count IV**
**Lanham Act – False Designation of Origin**

50.　For its paragraph 50 of this Complaint, Playboy incorporates by reference and restates the allegations set forth in paragraphs 1-49 above.

51.　FrestaCom's unauthorized use of the Playboy Property in connection with a publication over which Playboy has not exercised any control and which Playboy has specifically prohibited, constitutes false designation of origin and false representation in violation of 15 U.S.C. § 1125(a).

52.　FrestaCom's use of the Playboy Property in connection with the magazine is likely to cause, and on information and believe has already caused, confusion in the marketplace.

53.　Playboy has suffered, and unless FrestaCom is enjoined will continue to suffer, immediate and irreparable harm as a result of FrestaCom's illegal conduct.

54.　FrestaCom has acted maliciously, fraudulently, deliberately and willfully, and with knowledge that its continuing use of the counterfeit Marks would deceive and/or cause confusion and mistake.

55.　As the guarantor for FrestaCom, and pursuant to the express terms of the Guarantee, Fresta Group is jointly and severally liable for all of FrestaCom's violations set forth herein.

56.　Playboy has no adequate remedy at law.

**Count V**
**Declaratory Judgment**

57.　For its paragraph 57 of this Complaint, Playboy incorporates by reference and restates the allegations set forth in paragraphs 1-56 above.

58.　FrestaCom breached and defaulted in its obligations under the IPLA in at least the following ways:

11

(a)     by its distribution and sale of the August edition of the Portuguese *Playboy* magazine, in violation of Paragraph 14(a) of the IPLA;

(b)     by its failure to pay guarantee royalties in violation of Paragraph 3(a) of the IPLA; and

(c)     by its failure to provide Statements as required by Paragraph 4 of the IPLA.

59.     On May 25, 2010, consistent with its rights under the IPLA, Playboy provided a written Notice of Default to FrestaCom and Fresta Group, and on July 22, 2010, again consistent with its rights under the IPLA, Playboy terminated the IPLA by written notice to FrestaCom and Fresta Group.

60.     Without any valid legal basis, defendants have challenged Playboy's right to terminate the IPLA and, acting as though FrestaCom's rights under the IPLA remain in full force and effect, have continued to use the Playboy Property in connection with an unauthorized "Playboy" publication.

61.     There exists a real and justifiable case and controversy between the parties concerning Playboy's right to terminate the IPLA and FrestaCom's alleged right to continue to act as Playboy's licensee.  Pursuant to 28 U.S.C. § 2001, therefore, this Court may and should declare the rights and obligations of the parties pursuant to the IPLA.

### Count VI
### Breach of Contract

62.     For its paragraph 62 of this Complaint, Playboy incorporates by reference and restates the allegations set forth in paragraphs 1-61 above.

63.     The IPLA is a valid, binding and legally enforceable contract between Defendants and Playboy.

64.     Defendant FrestaCom has breached the IPLA in at least the following ways:

(a)     by its distribution and sale of an unauthorized Playboy publication, in violation of Paragraph 14(a) of the IPLA;

(b)     by its failure to pay guarantee royalties in violation of Paragraph 3(a) of the IPLA;

(c)     upon termination of the IPLA, by failing to refrain from any further use of the Playboy Property or any further reference to anything similar to the Playboy Property;

(d)     upon termination of the IPLA, by failing to comply with the provisions of Paragraph 14 which set forth Defendants' post-termination obligations; and

(e)     upon termination of the IPLA, by failing to pay Playboy the Termination Fee to which it is entitled, consisting of all Guaranteed Royalties due during the term of the IPLA plus all Earned Royalties due under the IPLA through the date of termination.

65.     As the guarantor for FrestaCom, and pursuant to the express terms of the Guarantee, Fresta Group is jointly and severally liable for all of FrestaCom's breaches set forth herein.

66.     Playboy has more than substantially performed all of its obligations under the IPLA.  As a direct consequence of defendants' wrongful conduct as alleged herein, Playboy has suffered and continues to suffer damages in an amount to be proven at trial.

**Count VII**
**Unjust Enrichment**

67.     For its paragraph 67 of this Complaint, Playboy incorporates by reference and restates the allegations set forth in paragraphs 1-66 above.

68.     At all times since Playboy terminated the IPLA , FrestaCom has continued to hold itself out as a Playboy licensee, and has used the Playboy Property to manufacture, promote, sell, and/or distribute an unauthorized Portuguese edition of *Playboy* magazine.

69.     FrestaCom has received, accepted, and derived benefits by using the Playboy Property and by holding itself out as a Playboy licensee.

70.     FrestaCom has been unjustly enriched at Playboy's expense, by an amount equal to the profits that FrestaCom has earned using the Playboy Property since Playboy terminated the IPLA, as well as the profits derived from its distribution and sale of the unauthorized publication.

71.     As the guarantor for FrestaCom, and pursuant to the express terms of the Guarantee, Fresta Group is jointly and severally liable for all of FrestaCom's violations set forth herein.

**Count VIII**
**Accounting**

72.     For its paragraph 72 of this Complaint, Playboy incorporates by reference and restates the allegations set forth in paragraphs 1-71 above.

73.     Pursuant to Paragraph 4(a) of the IPLA, FrestaCom was required to provide Playboy with detailed sale and distribution "Statements" within sixty (60) days after the end of each calendar month.

74.     Such Statements had to include the following information:   (i) the value, expressed in local currency, of subscriptions billed; (ii) the net number and cover price of copies sold other than by subscriptions (showing gross non-subscription sales less returns); (iii) Net Advertising Revenues (showing gross billings, commissions and discounts); (iv) Net circulation Revenues; (v) Net Digital Circulation Revenues; (vi) Net Digital Advertising Elements Revenue; (vi) a copy of related print orders and distribution statements showing sales and returns (vii) the amount of Percentage Royalties due and payable, the computation of which is set forth under Paragraph 3.b. and 7.b. of the IPLA; and (viii) a listing of all advertisements broken out by (w) those that were billed for cash or credit, (x) those that were the subject of barter; (y) those that

were provided free of charge and (z) identification as to which issue and on what page of the Foreign Edition the advertisements appeared.

75.     As the guarantor for FrestaCom, and pursuant to the express terms of the Guarantee, Fresta Group is jointly and severally liable for all of FrestaCom's conduct set forth herein.

76.     FrestaCom has failed to provide Playboy with complete and adequate information as required by Paragraph 4.a of the IPLA. Playboy is entitled to a full accounting of these items.

## PRAYER FOR RELIEF

WHEREFORE, Playboy prays that this Court enter judgment in its favor and against Defendants on all counts of Playboy's Complaint and enter an order:

(a)     declaring, pursuant to 28 U.S.C. § 2201, that the IPLA has been lawfully terminated by Playboy and that Defendants have no right or license to hold themselves out as a Playboy licensee or use the Playboy Property in any manner;

(b)     preliminarily and permanently enjoining and restraining Defendants and all of their directors, officers, and agents and anyone acting in concert with any of them from using the Playboy Property in the design, manufacture, advertising, promotion, sale, or distribution of any product, and from conducting any activity or making any statements that are likely to cause confusion, mistake or deception in the marketplace as to Playboy's licensing of its Marks to FrestaCom;

(c)     directing Defendants to specifically perform all post-termination obligations under the PLA, including, without limitation, its obligations to (i) pay to Playboy all amounts due and owing under the IPLA, (ii) provide Playboy with all past due Statements, (iii) provide the post-termination Inventory Statement, and (iv) certify

the destruction of all of FrestaCom's finished or in-process inventory using the Playboy Property that is in FrestaCom's possession, custody or control;

(d)     directing Defendants to immediately destroy to Playboy all copies of the Foreign Edition which are on hand or in process and provide a certificate evidencing such destruction, signed by the Chief Financial Officer or Corporate Secretary of Defendants.

Directing Defendants to deliver to Playboy all copies of lists of names and addresses of subscribers to the Foreign Edition, the advertising contract files, the past editorial files, the past issues files, all bound volumes and all other files and records related to the Foreign Edition and all other documents as required by the IPLA.

(e)     requiring Defendants to disgorge all profits earned in using the Playboy Property after the IPLA was terminated by Playboy;

(f)     awarding Playboy Defendants' wrongful profits and Playboy's damages in an amount to be determined at trial;

(g)     awarding Playboy treble damages as allowed under 15 U.S.C. § 1117;

(h)     awarding Playboy statutory damages as allowed under 15 U.S.C. §1117;

(i)     awarding Playboy its attorneys' fees, equitable pre-judgment interest at a rate the Court deems just, and costs of the suit, as allowed under 15 U.S.C. § 1117;

(j)     directing defendants to provide a full and accurate accounting of all items of information that FestaCom was required to provide to Playboy pursuant to the IPLA; and

(k)     awarding Playboy such other and further relief as the Court deems just and proper.

Dated:  August 12, 2010

Respectfully submitted,

**PLAYBOY ENTERPRISES
INTERNATIONAL, INC.**


By:      s/ James R. Pranger
         One of its attorneys


James R Pranger (#6191672)
Patrick Frye (#6282907)
Neal, Gerber & Eisenberg LLP
Two N. LaSalle St., Suite 1700
Chicago, IL  60602
Phone:  312-269-8085
Fax:  312-269-1747


NGEDOCS: 1729871.2